# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| KARISSA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No. 6:19-CV-00011** |
| | § | |
| CITY OF YOAKUM, TEXAS, | § | |
| THERESA BOWE, | § | |
| ANITA RODRIGUEZ, | § | |
| and KEVIN COLEMAN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karissa Johnson claims that she is being denied the opportunity to criticize a former City of Yoakum employee, Steven Stary, in an open-session city council meeting. She alleges that he put her child's life at risk and harmed her reputation. Johnson filed this action against the City of Yoakum, Theresa Bowe, Anita Rodriguez, and Kevin Coleman (collectively the "Defendants"),[1] alleging that Defendants are violating her First Amendment rights under a new meeting-speaker policy that Johnson says bars her from speaking against Stary at a meeting. Johnson contends that policy—which limits citizens' comments to matters within the city council's legislative functions—is unconstitutional both on its face and as applied to her.

---

[1] The Court previously dismissed Johnson's sole claim against Stary. (Dkt. No. 1 at 2, 15) (stating sole claim against Stary); (Dkt. No. 63 at 12–13) (Court's dismissal of claim). Accordingly, the Court directs the Clerk of the Court to dismiss Stary as a Defendant.

But the policy is a viewpoint-neutral restriction in a limited public forum, and Johnson has not tried to speak at a meeting since the City of Yoakum adopted it. So Johnson's facial challenge, while justiciable, fails on the merits. Her as-applied challenge, on the other hand, is not yet ripe. Even though Johnson has shown that the policy is likely to be applied to her *in some way* (and so has standing), it is unclear exactly *how* it will be applied. And in an as-applied challenge, the "how" is really what matters. Until Johnson attempts to speak at a meeting and the City enforces the written policy against her, her as-applied claim is not justiciable. Johnson must try to exercise her rights before the Court will adjudicate them.

Pending before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6), (Dkt. No. 69), and Defendants' Motion for Summary Judgment as to Plaintiff's First Amended Complaint, (Dkt. No. 79). For the following reasons, these motions are **GRANTED in part** and **DENIED in part**. Johnson's facial challenge is **DISMISSED WITH PREJUDICE**, and her as-applied challenge is **DIMISSED WITHOUT PREJUDICE.**

## I.    BACKGROUND[2]

### A.    FACTS

In June 2017, Plaintiff Karissa Johnson and her husband delivered their baby at home in Yoakum, Texas, with the help of two Texas-licensed midwives. (Dkt. No. 67 at

---

[2]    For purposes of this Motion, the Court accepts all factual allegations in the First Amended Complaint as true—except as they relate to jurisdiction—and views them in the light most favorable to Johnson. *White v. United States Corr., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The Court takes Johnson's allegations as true on the facial challenge because such a challenge
(continue)

2); (Dkt. No. 56-1 at 10). When complications arose, the midwives told Johnson's husband to call for emergency services. (Dkt. No. 67 at 2); (*see* Dkt. No. 56-1 at 10). Four emergency medical technicians ("EMTs") arrived, including Steven Stary. (Dkt. No. 67 at 2). Upon arrival, Stary allegedly refused to treat Johnson and instead began to argue with her husband. (*Id.*); (Dkt. No. 56-1 at 10). He then argued with the midwives over how Johnson should be positioned in the ambulance. (Dkt. No. 67 at 3); (Dkt. No. 56-1 at 10). Stary's superior had to step in and overrule him. (Dkt. No. 67 at 3); (Dkt. No. 56-1 at 10).

At the hospital, Johnson gave birth to a "very blue baby girl." (Dkt. No. 67 at 3); (Dkt. No. 56-1 at 10). The attending physician remarked that the child would not have survived if the hospital transfer had been delayed any longer. (Dkt. No. 67 at 3); (Dkt. No. 56-1 at 10). After this incident, Stary allegedly spread rumors about Johnson and her husband, mocking his call for emergency services and disparaging their family name. (Dkt. No. 67 at 3); (Dkt. No. 56-1 at 10).

In October 2017, Johnson asked Kevin Coleman, the city manager, to place her on the agenda for the city council meeting scheduled for October 10, 2017, to complain about Stary's conduct. (Dkt. No. 67 at 3–4); (Dkt. No. 80-1 at 14, 22); (*see* Dkt. No. 80-6 at 2). She wanted to present the complaint in an open-session meeting so that it would be in the

---

turns on the constitutionality of the law "as written," making the case-specific facts irrelevant. *Beckerman v. City of Tupelo*, 664 F.2d 502, 506 (5th Cir. 1981); *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023) ("A facial challenge to the constitutionality of a statute presents a pure question of law . . . ."). But when resolving a factual attack on jurisdiction, courts do not presume the truthfulness of jurisdictional allegations and may look beyond the pleadings to assure themselves of jurisdiction. *See Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023); *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981) ("[W]hen a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

public record. (Dkt. No. 67 at 6); (Dkt. No. 56-1 at 13). Coleman denied her request, citing an unwritten policy that limited complaints about city employees to closed-session meetings. (Dkt. No. 67 at 4); (Dkt. No. 80-1 at 14–15); (Dkt. No. 80-2 at 20); (Dkt. No. 56-1 at 14–15). Upon Johnson's request, Coleman provided copies of portions of the City's policy manual and Open Meetings Handbook. (Dkt. No. 67 at 4); (Dkt. No. 56-1 at 15). Neither source defined what types of issues could be placed on an open-session agenda. (Dkt. No. 67 at 4); (*see* Dkt. No. 56-1 at 107–130) (Yoakum's Code of Ordinances). Coleman told Johnson that the public could criticize only the city manager in open session because the city council oversaw the city manager's employment but had no direct authority over city employees. (Dkt. No. 67 at 5); (Dkt. No. 56-1 at 111); *see* Yoakum, Tex., Code of Ordinances, art. III, § 8(c) (1988 & Supp. 2025) ("Except for the purpose of investigation under section 9 [of this article], the council or its members shall deal with city officers and employees who are subject to the direction and supervision of the city manager *solely through the manager . . . .*" (alteration in original) (emphasis added)). He said that issues involving other employees would be handled privately by the city manager.[3] (Dkt. No. 67 at 5); (Dkt. No. 80-1 at 14). Johnson later filed a complaint about Stary with Texas Health and Human Services. (Dkt. No. 67 at 6–7); (Dkt. No. 56-1 at 144–48). Stary resigned from his position with the City in January 2018. (Dkt. No. 67 at 7).

---

[3]    Yoakum has a "council-manager" form of government. Yoakum, Tex., Code of Ordinances, art. I, § 2 (1988 & Supp. 2025). Under the council-manager form, all city powers are vested in an elected governing body—the city council. *Id.* The city council appoints a city manager. *Id.* The city manager serves as "the chief administrative officer of the city," and is "responsible to the city council for the proper administration of all the affairs of the city," including general oversight of municipal departments. *Id.* art. IV, § 1(d).

Despite Coleman's denial of Johnson's request to speak about *Stary* in October, the city council gave Johnson space on the agenda to criticize *Coleman* at the November 2017 meeting, given his role as city manager. (*See id.* at 5–6); (Dkt. No. 56-1 at 16–17, 133–34, 142–43). Johnson appeared at that meeting and read her complaint about Coleman's refusal to let her criticize Stary, but she was not allowed to discuss Stary or mention him by name. (Dkt. No. 67 at 6); (Dkt. No. 80 at 7) (citing Dkt. No. 56-1 at 19–20).

Later, at a May 2018 meeting, Johnson again attempted to criticize Stary while commending other city employees for their efforts during her delivery. (Dkt. No. 67 at 8); (Dkt. No. 67-2 at 1–2); (Dkt. No. 56-1 at 22–23). When Johnson started to speak about Stary, Mayor Anita Rodriguez cut her off, and Secretary Therea Bowe escorted her out of the building. (Dkt. No. 67 at 8–10); (Dkt. No. 56-1 at 24–25); (Dkt. No. 80-1 at 4–6, 15). This all happened under the City's alleged unwritten policy.

Defendants then adopted a written meeting-speaker policy on April 9, 2019 — several months after Johnson filed her Original Complaint. (Dkt. No. 1) (filed December 12, 2018); (Dkt. No. 67-3) (adopted April 9, 2019). Under the written policy, the city council "offers citizens an opportunity to bring forth any and all matters that are germane and relevant to any subject matter of City affairs or business that is within the scope of the authority and legislative functions of the City Council." (Dkt. No. 67-3 at 2). The policy also states that any council member may raise a point of order to determine "whether the subject matter to be heard . . . by a citizen is germane and relevant to . . . City affairs or business that is to be considered by City Council." (*Id.* at 3). Johnson alleges that the "written policy is no different tha[n] the unwritten policy," and that it is

intended to prevent residents from criticizing city employees in council meetings. (Dkt. No. 67 at 11) (citing Dkt. Nos. 67-4, 67-5); (Dkt. No. 70 at 11); (Dkt. No. 80-1 at 7).

In 2024, Johnson applied to speak at the May and June meetings to raise her complaint about Stary. (Dkt. No. 79 at 4); (Dkt. No. 79-1 at 2, 10, 21). Bowe approved both requests. (Dkt. No. 79 at 4); (Dkt. No. 79-1 at 11, 22). Each approval stated that Johnson could read complaints about Stary but that her comments were "otherwise subject to the existing policy." (Dkt. No. 79-1 at 8, 24). Johnson missed the May meeting because of a family emergency. (Dkt. No. 80-6 at 2–3); (Dkt. No. 80-7); (Dkt. No. 79-1 at 20). She declined to speak at the June meeting because she believed that Defendants would prevent her from speaking about Stary. (Dkt. No. 79-1 at 37). In a letter to Bowe, Johnson stated that Defendants were trying to censor her speech and were providing inadequate time for her comments. (*Id.*). Bowe responded to Johnson the day of the June meeting, stating that the City was not trying to censor her speech or limit her time. (Dkt. No. 80-11 at 2). Even so, Bowe cautioned that Johnson's comments would be "otherwise subject to the existing policy." (*Id.*). Johnson did not attend because she did not see Bowe's response until after the meeting that day. (Dkt. No. 80-6 at 3–4).

In February 2025, Johnson requested to speak at every monthly meeting from March 2025 to May 2026, and listed the topic of her comments for each one. (Dkt. No. 80-12). In her email application to Bowe, she specified that she did not agree to comply with the policy and requested to speak about Stary at the March 2025 meeting. (*Id.* at 1). Defendants' counsel responded in a letter informing Johnson that she was approved to speak at the March and April 2025 meetings. (Dkt. No. 81-1 at 5). But Defendants'

counsel also stated that the City was concerned that Johnson would speak on topics outside of the city council's legislative authority. (*Id.*) ("Obviously, we have some concerns with your client's refusal to agree to limit her speech to matters within the Council's purview so as not to interfere with the City Council's ability to conduct business during the monthly meetings."). Johnson apparently did not attend the March 2025 meeting. (Dkt. No. 81 at 4.) And in the recent joint pretrial order, the Parties agree that Johnson did not attend the April or May meetings either. (Dkt. No. 85 at 11, 14). Johnson claims she did not receive a phone call or email granting or denying her requests to speak, as she says City policy requires. (*Id.* at 11.) Yet Johnson did receive a letter from the City's counsel on March 6, 2025, clearly informing Johnson that her request to speak at the April meeting had been approved. (Dkt. No. 81-1 at 5.) The City agrees that Johnson did not appear at the April or May meetings. (Dkt. No. 85 at 14.)

### B.    PROCEDURAL HISTORY

Johnson sued Defendants in the United States District Court for the Western District of Texas on December 12, 2018. (Dkt. No. 1). The Parties agreed to transfer this case to the Victoria Division of the Southern District of Texas, where it was assigned to the Honorable Kenneth M. Hoyt. (Dkt. Nos. 7–10). Defendants moved to dismiss for failure to state a claim and on grounds of qualified immunity. (Dkt. No. 16). Judge Hoyt denied Defendants' motion, finding that it was premature and explaining that the Parties needed to conduct further discovery. (Dkt. No. 21). Defendants filed an interlocutory appeal seeking review of that decision. (Dkt. No. 22).

On April 21, 2021, the Fifth Circuit reversed in part, holding that Johnson cannot "succeed on her claim that Rodriguez and Bowe violated [her] constitutional right to be free from First Amendment retaliation . . . because she cannot show that she 'suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in' her speech." *Johnson v. Bowe*, 856 F.App'x 487, 492 (5th Cir. 2021) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). The Fifth Circuit remanded with instructions to dismiss Johnson's First Amendment retaliation claim based on qualified immunity. *Id.* at 493. The panel declined to reach Johnson's remaining claims for lack of appellate jurisdiction. *Id.* at 491, 493. The case was reassigned to the undersigned on May 17, 2021. (Dkt. No. 29).

On remand, the Parties resumed discovery, and Defendants moved to dismiss. (Dkt. No. 40). The Court considered the remaining three claims: (1) a claim against Defendants for declaratory and injunctive relief, seeking to prevent Defendants from enforcing the unwritten policy; (2) a First Amendment retaliation claim against the City for monetary damages; and (3) a claim against Stary for violating the Health Insurance Portability and Accountability Act ("HIPAA"). (Dkt. No. 63 at 6, 8–13).

This Court dismissed all three claims but granted Johnson leave to amend because the City adopted the written policy after Johnson filed her Original Complaint. (*Id.* at 10, 13). Thus, the only remaining issue is whether the *written policy* violates Johnson's First Amendment rights. (*See id.*). And as the Court noted, it "is unclear from the face of the now-written policy whether Johnson continues to be prohibited from speaking about Stary" at city council meetings. (*Id.* at 10).

8

Johnson filed an amended complaint. (Dkt. No. 67). And Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6), alleging that Johnson has not shown how the policy is unconstitutional on its face or as applied to her, particularly because she had not attempted to speak at a meeting since Defendants adopted the written policy. (Dkt. No. 69 at 8–9). Johnson responded, (Dkt. No. 70), and Defendants replied, (Dkt. No. 71).

Defendants have also moved for summary judgment, arguing that their policy is constitutional under the limited-public-forum standard. (Dkt. No. 79 at 8–12). Johnson again responded, (Dkt. No. 80), and Defendants replied, (Dkt. No. 81).

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the

motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## B.    RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed.2d 33 (2021) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014)); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (citing *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (per curiam) (en banc)).

Courts should address Rule 12(b)(1) jurisdictional issues before addressing any attack on the merits of a claim because "a federal court may not rule on the merits of a case without first determining its jurisdiction." *Daves v. Dallas County*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc). Whether the attack on the merits comes through Rule 12(b)(6) or Rule 56, "[j]urisdiction is always first." *Pool v. City of Houston*, 87 F.4th 733, 733 (5th Cir. 2023) (quoting *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022)); *see Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B 1981) ("When a court must dismiss a case for lack of

jurisdiction, the court should not adjudicate the merits of the claim."); *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F.Supp.3d 1020, 1024 (W.D. Tex. 2020) ("When considering a Rule 12(b)(1) motion to dismiss with a motion for summary judgment in the alternative, we must determine if subject matter jurisdiction is present before considering the substantive arguments of the summary judgment motion." (quoting *Cupit v. United States*, 964 F.Supp. 1104, 1106 (W.D. La. 1997))).

C.    STANDING

One of the "landmarks" of justiciability is the doctrine of standing.    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).    The plaintiff bears the burden of establishing standing.  *Id.* at 561, 112 S.Ct. at 2136 (first citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); and then citing *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975)).    Standing must be established with the same "manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing cases).

To establish standing, a plaintiff must suffer (1) an injury in fact (2) that is caused by the defendant and (3) is redressable by a favorable determination of the case.  *Id.* at 560–61, 112 S.Ct. at 2136.  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560, 112 S.Ct. at 2136 (quotations and citations omitted).  The causation element is that the injury complained of must be fairly traceable to the defendant's conduct at issue.  *Id.*  And redressability requires that it is likely, not

speculative, that a judicial determination in the plaintiff's favor will relieve the alleged injury.  *Id.* at 561, 112 S.Ct. at 2136.

### D.   RIPENESS

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'"  *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Lab'ies v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).  Ripeness, no less than standing, is a constitutional prerequisite to the exercise of subject-matter jurisdiction.  *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002).  Plaintiffs bear the burden of establishing that their claim is ripe.  *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (citing *FW/PBS, Inc.*, 493 U.S. at 231, 110 S.Ct. at 608).  Ripeness determines when a plaintiff has developed enough facts for a federal court to adjudicate the claim.  *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017).  The two factors of ripeness are "(1) 'the fitness of the issues for judicial decision'; and '(2) the hardship to the parties of withholding court consideration.'"  *Cochran v. SEC*, 20 F.4th 194, 212 (5th Cir. 2021) (en banc) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008)).

### E.   PROCEDURAL CONSIDERATIONS

With all of the relevant legal standards spelled out, one final preliminary matter remains: identifying the correct procedural vehicles for each of the issues before the Court.  The issues are, first, whether Johnson's claims are justiciable—a threshold

question that must be resolved affirmatively before proceeding; and second, only if justiciability is established, whether the claims are meritorious. And the potential procedural vehicles are 12(b)(1), 12(b)(6), and summary judgment. The Court turns first to justiciability.

## 1. <u>Justiciability</u>

"The procedural means for resolving standing issues are not as clearly defined as might be imagined." 13B Charles Alan Wright et al., Federal Practice and Procedure § 3531.15 (3d ed. 2025) [hereinafter Wright & Miller, *Justiciability*]; *see also Barrett Comput. Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989) ("Challenges to standing are disposed of in a number of ways, and it is difficult to extract a rule from the cases that clearly identifies the proper method for resolving a particular standing problem."). When standing (or subject-matter jurisdiction more broadly) is attacked on the face of the pleadings alone, Rule 12(b)(1) is the appropriate vehicle. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) ("A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, . . . the court must consider the allegations in the plaintiff's complaint as true."); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Yet the "defendant can insist that a factual inquiry into standing be made before trial," and "[m]any cases have suggested that summary-judgment procedure is appropriate for this purpose." Wright & Miller, *Justiciability*, *supra*; *see also id.* n.24 (collecting cases). Indeed, in *Lujan v. Defenders of Wildlife*—a cornerstone of modern standing doctrine—the Supreme Court addressed the issue of standing on appeal from

the denial of summary judgment and reversed, holding that the plaintiffs had not made a factual showing of injury or redressability sufficient to survive summary judgment. *See* 504 U.S. at 562–71, 112 S.Ct. at 2137–42. And the Fifth Circuit has often affirmed a district court's grant of summary judgment on standing grounds. *See, e.g.*, *La. ex rel. La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) ("Lousiana's lack of competent summary judgment evidence fatally undermines its assertion of standing on [an increased enforcement-cost] basis."); *see also Paxton v. Dettelbach*, 105 F.4th 708, 710 (5th Cir. 2024).

On the other hand, because "the granting of summary judgment is a disposition on the merits of the case," a robust line of caselaw recognizes that "a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction." *Gibson v. United States*, 809 F.3d 807, 811 (5th Cir. 2016) (quoting *Stanley*, 639 F.2d at 1157).[4] "The rationale for this conclusion, although somewhat metaphysical, is sound. If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action." Wright & Miller, *supra*, § 2713; *Lower Colo. River*

---

[4] *See also Duarte v. Mayorkas*, 27 F.4th 1044, 1051 n.5 (5th Cir. 2022) ("[O]ur precedents establish that a grant of summary judgment is an adjudication on the merits, and summary judgment is not a vehicle to dispose of a case for lack of jurisdiction."); *Gaspard v. Amerada Hess Corp.*, 13 F.3d 165, 168 (5th Cir. 1994) ("We have previously expressed doubt as to the propriety of summary judgment as a tool for disposing of a case on jurisdictional grounds when the district court does not actually purport to address the merits of the parties' dispute."); *Ysleta Del Sur Pueblo*, 433 F.Supp.3d at 1023 ("When dismissal is sought for lack of subject-matter jurisdiction, the proper procedural form is a Rule 12(b)(1) motion to dismiss, not summary judgment."); Wright & Miller, *supra*, § 2713 n.5 (collecting cases); *id.* § 1350 ("Federal courts have concluded that both a Rule 12(e) motion for a more definite statement and, in most circumstances, a motion for summary judgment under Federal Rule of Civil Procedure 56 are inappropriate methods for challenging the district court's subject matter jurisdiction." (collecting more cases)).

*Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 927 (5th Cir. 2017) ("[J]udgments made by a district court without subject matter jurisdiction are void." (first citing *Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015); then citing *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987); and then citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S.Ct. 1367, 1377, 176 L.Ed.2d 158 (2010))).

What's more, the standards of summary judgment fit awkwardly with a court's obligation to assure itself of jurisdiction and its role as the factfinder on jurisdictional issues. *See Buckler v. United States*, 919 F.3d 1038, 1044 ((8th Cir. 2019) ("Because of the 'unique nature of the jurisdictional question,' . . . it is the court's duty to 'decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue.'" (internal citations omitted) (quoting *Osborn v. United States*, 918 F.2d 724, 729, 730 (8th Cir. 1990)); *Williamson*, 645 F.2d at 413 ("Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations. . . . The unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed." (internal citations omitted)); *Ramming*, 281 F.3d at 161 ("[T]he plaintiff constantly bears the burden of proof that jurisdiction *does in fact exist*." (emphasis added)); Wright & Miller, *Justiciability*, *supra* ("The question [of standing] should be decided as a matter of fact, not carried forward if there is sufficient evidence to raise a genuine fact dispute.").

Put simply, it makes little sense to ask how a reasonable juror could rule on an issue the jury will not be asked to decide; and there must be a preponderance of the available evidence supporting a court's subject-matter jurisdiction, not merely a genuine

dispute about it.  *Compare Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) ("When a defendant makes a factual attack, the plaintiff 'has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.'" (quoting *Paterson*, 644 F.2d at 523)) *and Paterson*, 644 F.2d at 523 ("If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction . . . a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.") *with Satterfield & Pontikes Constr., Inc. v. U.S. Fire Ins.*, 898 F.3d 574, 578 (5th Cir. 2018) ("A genuine dispute as to any material fact precludes summary judgment." (citing Fed. R. Civ. P. 56(a))).

Rather than a judgment holding that the court lacks power to render judgment, the caselaw supports another approach to resolving factual issues about subject-matter jurisdiction before trial: "a 12(b)(1) factual attack." *Kling*, 60 F.4th at 284.  "[A] 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Ramming*, 281 F.3d at 161).  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)); *see also Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021) ("A district court evaluating a factual attack on subject

matter jurisdiction may proceed as it never could at summary judgment and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." (internal quotations omitted) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021)).

A 12(b)(1) factual attack may be used to attack justiciability issues like standing. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 ("A motion to dismiss for lack of standing may be either 'facial' or 'factual.'" (quoting *Paterson*, 644 F.2d at 523)). "To defeat a factual attack [on standing], a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)). "In a 12(b)(1) factual attack, the district court's resolution of disputed jurisdictional facts is reviewed for clear error." *Kling*, 60 F.4th at 284 (citing *In re S. Recycling, LLC*, 982 F.3d 374, 379 (5th Cir. 2020)).

That said, this approach has its limits: "'Resolution of the jurisdictional issue on a 12(b)(1) motion is improper' where the jurisdictional attack is 'intertwined with the merits of a claim.'" *Pickett v. Tex. Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (cleaned up) (quoting *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). The questions are intertwined "where issues of fact are central both to subject matter jurisdiction and the claim on the merits." *Montez*, 392 F.3d at 150.

Yet because the existence of an injury in fact and whether that injury rises to the level of a constitutional deprivation are separate questions, issues of standing will often be separate from the merits. *See Adar v. Smith*, 639 F.3d 146, 150 (5th Cir. 2011)

("[S]tanding does not depend upon ultimate success on the merits . . . ."); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) ("It is inappropriate for the court to focus on the merits of the case when considering the issue of standing."); *Warth*, 422 U.S. at 500, 95 S.Ct. at 2206("[S]tanding in no way depends on the merits of the plaintiff's contention[s] . . . ."). So too with ripeness, which prevents judicial consideration of the merits altogether until a controversy is presented in "clean-cut and concrete form." *Renne v. Geary*, 501 U.S. 312, 321–22, 111 S.Ct. 2331, 2339, 115 L.Ed.2d 288 (1991) (quoting *Rescue Army v. Mun. Ct. of L.A.*, 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947)).

The upshot for Johnson's claims is this: Defendants have moved both to dismiss *and* for summary judgment on the basis that Johnson lacks standing and that, as a result, this Court lacks jurisdiction. Defendants make a factual attack in both Motions, relying on evidence outside the pleadings, and Johnson has responded to both Motions with her own evidence. Because the Court finds that the justiciability issues are not intertwined with the merits of either Johnson's facial or as-applied challenge, the Court will consider these issues under the 12(b)(1) factual-attack standard, relying on all of the evidence in the record to assess its own jurisdiction.

## 2. **Merits**

As for the merits, the Court will address only Johnson's facial challenge because, as discussed below, that is the only claim ripe for the Court's review.  *See infra* Sections III(A)(2), (B)(2).  And for the following reasons, the Court considers that claim under Rule 56—not Rule 12(b)(6).

A motion under Rule 12(b)(6) tests "the formal sufficiency of the statement of the claim for relief."  Wright & Miller, *Rule 12*, *supra*, § 1356.  It is not a vehicle for resolving factual disputes or assessing "the substantive merits of the plaintiff's case."  *Id.* (collecting cases).

Here, there is nothing wrong with Johnson's *statement* of the facial challenge.  Indeed, one plaintiff's statement of a facial challenge is likely as good as another's because "a 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual."  *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d. Cir. 2006)).

Thus, because the issue is with the *merits* of Johnson's facial claim, not her statement of it, the proper vehicle among those presented to the Court is summary judgment.[5]  *See Holy Spirit Ass'n for Unification of World Christianity v. Hodge*, 582 F.Supp.592, 595 (N.D. Tex. 1984) ("Summary judgment is appropriate when a law is challenged as facially inconsistent with the First Amendment since 'whether an

---

[5]    The matter would be different had the Defendants moved for judgment on the pleadings under Rule 12(c).

ordinance is void on its face because it impinges upon constitutionally protected activities is a legal, not a factual question.'" (quoting *Holy Spirit Ass'n for the Unification of World Christianity v. Alley*, 460 F.Supp. 346, 347 (N.D. Tex. 1978))).

## III.   DISCUSSION

The issues here are whether the City of Yoakum's written meeting-speaker policy is unconstitutional on its face or as applied to Johnson.[6]  (*See* Dkt. No. 63 at 10, 13).  She asserts that the policy is facially overbroad and unconstitutionally vague and, as applied to her, discriminatorily targets her viewpoint.  (Dkt. No. 80 at 17–23).  Johnson has asked this Court to enjoin enforcement of the written policy.  (Dkt. No. 67 at 15).  Johnson's facial and as-applied challenges are taken in turn.

### A.   Facial Challenge

#### 1.   <u>Standing for Johnson's Facial Challenge</u>

To establish an injury in fact for pre-enforcement actions, a plaintiff must show that "(1) [they] intend[] to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute." *Turtle Island Foods, S.P.C., v. Strain*, 65 F.4th 211, 215–16 (5th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014)).  A plaintiff need not actually experience enforcement to suffer an injury in fact.  *Id.*; *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) ("A plaintiff . . . need not have experienced 'an

---

[6]   Defendants' adoption of the written policy supplants the unwritten policy that Johnson previously challenged.  *See City of Dallas v. Emps. Ret. Fund of the City of Dall.*, 687 S.W.3d 55, 60 n.5 (Tex. 2024).

actual arrest, prosecution, or other enforcement action' to establish standing." (quoting *Driehaus*, 573 U.S. at 158, 134 S.Ct. at 2342)).

Johnson meets all three requirements to show an injury in fact for a pre-enforcement claim. First, she intends to speak about Stary during a city council meeting, (Dkt. No. 80-12), an activity that implicates her constitutional right to free speech, *see Heaney v. Roberts*, 846 F.3d 795, 798–99, 802 (5th Cir. 2017) (addressing free-speech claims against individual speaking at city-council meeting). Second, her course of conduct — the planned statement about Stary — is arguably proscribed by the policy. (*See* Dkt. No. 67-3 at 2–3); (Dkt. No. 67-4 at 1); (Dkt. No. 67-5 at 1). In 2023, after Yoakum adopted the written policy, Coleman testified that, from 2017 until at least August 31, 2023 — the day of his deposition — the City's policy was to prohibit residents from criticizing current or former city employees in open-session meetings.[7] (Dkt. No. 80-1 at 7, 20–21). And as recently as a few months ago, the City's counsel informed Johnson's counsel that "we have some concerns with your client's refusal to agree to limit her speech to matters within the Council's purview so as not to interfere with the City Council's ability to conduct business during the monthly meetings," (Dkt. No. 81-1 at 5), suggesting that policy would be enforced against Johnson in some way if she spoke about Stary. Third, Johnson has shown a credible threat of enforcement because Coleman testified that complaining about city employees is not allowed during open-session meetings, (Dkt. No. 80-1 at 20–21), and she has already been stopped while voicing her grievance about Stary in a May 2018

---

[7]     The City released Coleman from his employment contract in August of 2023. (Dkt. No. 80-1 at 2–3).

meeting, (Dkt. No. 67 at 8–9); (Dkt. No. 56-1 at 24–25); (Dkt. No. 80-1 at 4–6, 15). Although Johnson was interrupted before the City enacted the written policy, Johnson is not required to expose herself to enforcement again for a facial challenge to the written policy. *Driehaus*, 573 U.S. at 158–59, 134 S.Ct. at 2342.

And in any case, a credible threat of enforcement is assumed when a facial restriction targets "expressive activity" by the plaintiff's class and no "compelling contrary evidence" exists. *Turtle Island*, 65 F.4th at 218 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020)). Here, the class of people is the citizens of Yoakum who wish to speak at city council meetings but arguably fall within the facial restrictions of the policy. (Dkt. No. 67-3 at 2); *see also Turtle Island*, 65 F.4th at 218 (noting that a class includes individuals who are "facially restricted by the policy"); *Speech First, Inc.*, 979 F.3d at 335 (same). Johnson is within this class because she lives in Yoakum, Texas, and wishes to speak at a council meeting in a way that is arguably restricted by the policy. (Dkt. No. 67 at 1–2, 11); (Dkt. No. 80-12). Defendants assert that Johnson was granted a place on an agenda to speak about Stary for two meetings in 2024 and again in 2025. (Dkt. No. 81 at 2, 4) (first citing Dkt. No. 79-1 at 7–11, 23–28; then citing Dkt. No. 81-1 at 4–6; and then citing Dkt. No. 81-2 at 4–7). But each approval contained a caveat that Johnson's comments would be subject to the speaker policy. (Dkt. No. 79-1 at 8, 24); (Dkt. No 81-1 at 5). Defendants offer no evidence showing that Johnson will be allowed to speak without interruption—that the City will not enforce the policy against her. As such, Johnson has shown that she has an injury in fact under the pre-enforcement standard for a First Amendment claim.

The causation requirement for standing is satisfied because Johnson's alleged First Amendment injury stems from the potential enforcement of the City's policy. (Dkt. No. 67 at 14–15); *see Speech First*, 979 F.3d at 338. And redressability is met because enjoining enforcement would alleviate Johnson's alleged harm. *See Speech First*, 979 F.3d at 338.

Therefore, Johnson has established that she has standing to bring her facial challenge.

## 2. <u>Ripeness of Johnson's Facial Challenge</u>

Even though Defendants do not raise a ripeness issue, courts must ensure that a claim is ripe before reaching the merits. *Urban Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir.2006) ("Before addressing the merits of any [case], however, [a] court must be convinced that the claim in question is ripe, even if neither party has raised the issue."); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012) (addressing ripeness of a facial challenge even though the parties did not contest it). A claim is ripe "when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (quoting *Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003)). The two ripeness factors are fitness for judicial decision and hardship from the court not deciding the claim. *Cochran*, 20 F.4th at 212. Fitness for judicial decision means that no further factual development is needed to decide the case. *Crown Castle Fiber, LLC v. City of Pasadena*, 76 F.4th 425, 436 (5th Cir. 2023).

Johnson's facial challenge is ripe. Because facial challenges involve only questions of law, *Opulent Life Church*, 697 F.3d at 287, they "are generally ripe the moment the

challenged regulation or ordinance is passed," *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736 n.10, 117 S.Ct. 1659, 1666 n.10, 137 L.Ed.2d 980 (1997).

Thus, Johnson's facial challenge is ripe for adjudication. The Court now turns to the merits of her facial challenge.

### 3.     Merits of Johnson's Facial Challenge

"A law implicating the right to expression may be invalidated on a facial challenge if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Nat'l Fed'n of the Blind of Tex., Inc. v. City of Arlington*, 109 F.4th 728, 733 (5th Cir. 2024) (alterations omitted) (quoting *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013)). "Even in the First Amendment context, facial challenges are disfavored . . . ." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744, 144 S.Ct. 2383, 2409, 219 L.Ed.2d 1075 (2024). In facial challenges, "[a] court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 755 (5th Cir. 2010) (quoting *Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). If an enactment is not overbroad, then the court examines the vagueness of its language. *Id.* at 755–56. An enactment is unconstitutional only if it is "impermissibly vague in all of its applications." *Id.* at 756 (quoting *Hoffman Ests.*, 455 U.S. at 494–95, 102 S.Ct. at 1191).

In assessing the impact on speech, the Court first identifies the type of forum because the forum may allow for speech regulation. *Id.* at 757–58. The three categories of forums are "(1) traditional and designated public forums; (2) limited public forums;

and (3) nonpublic forums." *Id.* (citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344–45 (5th Cir. 2001) (per curiam)).

Traditional and designated public forums are public areas that allow general communication and assembly, such as sidewalks, streets, and parks. *Id.* at 758. Limited public forums are "for public expression of particular kinds or by particular groups." *Id.* (quoting *Chiu*, 260 F.3d at 346). In limited public forums, the government "is not required to and does not allow persons to engage in every type of speech." *Id.* at 759 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001)). Speech may be restricted in limited public forums so long as an enactment "(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in the light of the purpose served by the forum." *Id.* at 758 (quoting *Chiu*, 260 F.3d at 346). "A restriction based on subject matter 'may be permissible if it preserves the purposes of that limited forum.'" *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830, 115 S.Ct. 2510, 2517, 132 L.Ed.2d 700 (1995)). The two factors that courts use to distinguish between designated public forums and limited public forums are "(1) the government's intent with respect to the forum, and (2) the nature of the forum and its compatibility with the speech at issue." *Id.* at 758–59 (quoting *Chiu*, 260 F.3d at 346).

Here, the city council meetings are limited public forums. Turning first to the City's intent for the city council meetings, this Court sets aside "'self-serving statements regarding the purpose of the meeting' for objective evidence leavened by common sense." *Id.* at 759 (quoting *Chiu*, 260 F.3d at 349 n.13). The city council holds these meetings to conduct city business, but the council opens the floor to hear citizens'

comments if they are approved to be placed on the meeting agenda. (Dkt. No. 67-3 at 2). Citizens' remarks are limited to two minutes, and they are prohibited from "impertinent, profane or slanderous remarks." (*Id.* at 2–3); (Dkt. No. 81-2 at 5). It follows that the intent of the meeting is to execute the agenda and hear citizens' remarks on what may be relevant to city business. *Fairchild*, 597 F.3d at 759–60. The short allotment for citizens' thoughts is not meant to be an opportunity to air grievances about city employees or debate personal issues. *Id.* at 759–60.

Additionally, the nature of the forum is not compatible with voicing any and all complaints. The forum is a city council meeting where citizens do not have an opportunity to speak by default; they must be pre-approved. (Dkt. No. 67-3 at 2). Meetings follow a pre-planned agenda filled only with items under the city council's authority. (*Id.* at 2–3). And the city council lacks the authority to discipline individual city employees directly. Yoakum, Tex., Code of Ordinances, art. III, § 8(c) (1988 & Supp. 2025) ("Except for the purpose of investigation under section 9 [of this article], the council or its members shall deal with city officers and employees who are subject to the direction and supervision of the city manager solely through the manager . . . ." (alteration in original)). Council members can only voice their opinions on employee-supervisory matters to the city manager. *Id.* The nature of this forum is for the city council to work through items on the agenda and potentially identify issues to be addressed in future meetings. (*See* Dkt. No. 67-3 at 2); (Dkt. No. 81-2 at 5–7). Accordingly, the city council meetings are limited public forums because they are intended for expression of particular kinds—matters within the city council's authority or business that it should consider. (*See*

Dkt. No. 67-3 at 2–3); *see also Fairchild*, 597 F.3d at 760 (explaining how a school board is a limited public forum when it does not engage the public in debate and only provides for particular kinds of expression).

Because the meetings are limited public forums, the city council need not allow every type of speech. It can have speech restrictions that do not engage in viewpoint discrimination and are reasonable in light of the meetings' purposes. *Fairchild*, 597 F.3d at 758. Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney*, 846 F.3d at 802 (quoting *Rosenberger*, 515 U.S. at 829, 115 S.Ct. at 2516). "[A] claim of viewpoint discrimination . . . requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose." *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013). Where the speech restriction is based on subject matter or time constraints, there is no First Amendment violation. *Heaney*, 846 F.3d at 802.

The speech restriction on citizens' comments is not viewpoint discrimination because the language of the policy is not suppressing speech based on a motivating ideology or opinion. *Fairchild*, 597 F.3d at 758, 760. The policy restricts citizens to speaking on matters relevant to city affairs and within the scope of the city council's legislative authority. (Dkt. No. 67-3 at 2). This restriction is based on a subject matter—issues within the city council's purview. (*See id.*). Excluding a particular class of speech

is acceptable in a limited public forum when done to protect the forum's purpose. *Rosenberger*, 515 U.S. at 829–30, 115 S.Ct. at 2516–17.

The city council's speech restriction is also reasonable. The city council aims to keep citizens' comments to subject matters within its purview. (Dkt. No. 67-3 at 2–3). A citizen's placement on a meeting agenda is not an invitation to voice complaints or spark debate about the actions of individual city employees. (*See id.*); Yoakum, Tex., Code of Ordinances, art. III, § 8(c) (1988 & Supp. 2025). It is permissible to stop a citizen from speaking about matters that do not pertain to city business. *Fairchild*, 597 F.3d at 760. The city council is not required to permit Johnson to voice a grievance about Stary during a meeting when it has no authority to manage city employees. *Id.*; *see* Yoakum, Tex., Code of Ordinances, art. III, § 8(c) (1988 & Supp. 2025). In addition, Johnson may—and is supposed to—voice her complaint about Stary to the city manager. (Dkt. No. 80-1 at 14). Therefore, the city council's speech restriction is facially reasonable in consideration of the purpose of council meetings. *Fairchild*, 597 F.3d at 760–61.

Johnson's facial challenge against the City's meeting-speaker policy fails because council meetings are limited public forums, which permit speech-content restrictions, and the city council's policy does not constitute viewpoint discrimination and is

reasonable to serve the purposes of the meetings. Johnson's facial challenge therefore fails.

## B. AS-APPLIED CHALLENGE

### 1. <u>Standing for Johnson's As-Applied Challenge</u>

To establish standing for an as-applied challenge, a plaintiff must show (1) an injury in fact, (2) causation, and (3) redressability. *Speech First*, 979 F.3d at 330 (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. at 2136). A plaintiff establishes an injury in fact in the same manner as facial challenges: (1) intent to engage in constitutionally-protected conduct, (2) that conduct is arguably prohibited by the challenged policy, and (3) the policy is substantially likely to be enforced. *Id.* (citing *Driehaus*, 573 U.S. at 161–64, 134 S.Ct. at 2343–45). When examining as-applied challenges, courts assess only the facts of the case, not any hypothetical scenario where a rule may be unconstitutional. *Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014).

Here, Johnson satisfies all three elements of standing. Starting with her injury in fact, as with her facial challenge, Johnson's intended conduct—voicing a complaint about Stary in a council meeting—implicates her First Amendment right to free speech. *Heaney*, 846 F.3d at 798–99, 802. Whether that constitutional interest has been or will be violated is a separate matter—a merits questions. Standing does not require plaintiffs to prove their claim; only that they have suffered an injury of the type traditionally cognizable in court. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427, 141 S.Ct. 2190, 2206, 210 L.Ed.2d 568 (2021) (holding that an injury for standing purposes is "any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in

American courts"). Injuries to speech rights are a traditionally cognizable injury. *Id.* at 425, 141 S.Ct. at 2204. Indeed, "[i]f a plaintiff is an object of a [government] regulation 'there is ordinarily little question that the action or inaction has caused him injury . . .'" for standing purposes. *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan,* 504 U.S. at 561–62, 112 S.Ct. at 2137). Second, Johnson's intended conduct is arguably prohibited by the policy. (*See* Dkt. No. 67-3 at 2–3); (Dkt. No. 67-4 at 1); (Dkt. No. 67-5 at 1). Third, she has established facts showing (1) a substantial threat of the policy being enforced against her through Coleman's 2023 deposition testimony, (Dkt. No. 80-1 at 20–21); (2) the City's continued concern that Johnson's comment will fall outside the scope of the city council's legislative authority, (Dkt. No. 81-1 at 5); and (3) a previous interruption during her speech in a 2018 meeting, (Dkt. No. 67 at 8–9); (Dkt. No. 56-1 at 24–25); (Dkt. No. 80-1 at 4–6, 15).

Accordingly, Johnson has established standing to support her as-applied challenge. She does not have to prove that the policy will be applied to her in an unconstitutional manner, only that there is a substantial threat the policy will be applied to her. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("When considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." (alterations omitted) (quoting *Cole*, 484 F.3d at 723).

## 2.    Ripeness of Johnson's As-Applied Challenge

But Johnson's as-applied claim is not ripe. The two factors for ripeness are fitness for judicial decision and hardship from the court not deciding the case. *Cochran*, 20 F.4th

at 212.  Claims are fit for judicial decision when no further factual development is needed for the court to decide the case.  *Crown Castle Fiber*, 76 F.4th at 436.  A plaintiff must establish that their claim is ripe even when they have standing.  *Roark & Hardee LP*, 522 F.3d at 544.  Ripeness analyses are often required when plaintiffs bring pre-enforcement claims.  *Id.*  A claim is ripe when a plaintiff presents enough facts for the court to decide the case.  *Pearson*, 624 F.3d at 684.  And where a claim would benefit from further factual development, the plaintiff must show that some hardship would result from the delay of judicial review.  *Roark & Hardee LP*, 522 F.3d at 545.

Johnson's as-applied First Amendment claim is not ripe.  First, her claim is not fit for judicial decision.  More factual development is needed because Johnson has not attempted to speak against Stary in a council meeting since the Defendants adopted the written policy.  (Dkt. No. 69 at 9) ("There is no evidence, allegation or claim whatsoever that Plaintiff has attempted, made any effort, or did in fact utilize the written City of Yoakum Agenda Procedure Policy on April 9, 2019 prior to the filing of the Plaintiff's Amended Complaint on April 15, 2024." (citing Dkt. No. 67)); (Dkt. No. 71 at 2); (Dkt. No. 79 at 5) (citing Dkt. No. 79-2 at 10–12); (*see* Dkt. No. 80-6 at 2–4); (Dkt. No. 81 at 4) (first citing Dkt. No. 81-1 at 5; and then citing Dkt. No. 81-2 at 5).  Thus, this Court is not in a proper position to decide this claim.  The Court would be better positioned to address the as-applied challenge in the future if Johnson can present facts showing how the policy was actually applied to her—i.e., at what point in her remarks she was cut off, whether she was permitted to speak about the city manager, whether she was permitted to praise employees but not criticize them, etc.  *Pearson*, 624 F.3d at 684.  Without wading into the

merits of Johnson's claim, suffice it to say: how a law is actually applied is a matter of some significance in an as-applied challenge.

Second, Johnson has not shown that postponing judicial review would cause her any hardship. This case does not involve a threat of criminal prosecution, and Johnson has not provided evidence of any other hardships she might suffer. Thus, she has not made a showing of hardship that would outweigh the concerns about the need for further factual development.

Accordingly, because Johnson's as-applied challenge is not ripe, this Court dismisses her First Amendment as-applied challenge without prejudice due to lack of subject-matter jurisdiction. If Johnson can show that the policy was actually applied to her, then she may file an amended complaint bringing an as-applied challenge; she may not bring any further facial challenges to the policy.

## IV.  CONCLUSION

For the above reasons, Defendants' Motion to Dismiss, (Dkt. No. 69), is **GRANTED in part** and **DENIED in part**, and Defendants' Motion for Summary Judgment, (Dkt. No. 79), is **GRANTED in part** and **DENIED in part**. Johnson's facial challenge is **DISMISSED WITH PREJUDICE**, and her as-applied challenge is **DIMISSED WITHOUT PREJUDICE**.

It is SO ORDERED.

Signed on August 19, 2025.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE