United States District Court
Southern District of Texas
ENTERED
September 29, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **KARISSA JOHNSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:19-CV-00011** |
| | § | |
| **CITY OF YOAKUM,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karissa Johnson alleges that the City of Yoakum (the "City") applied its 2019 meeting-speaker policy (the "2019 written policy") in a manner that restricted her ability to criticize former City employee Steven Stary, City Clerk Theresa Bowe, and other City officials during city council meetings. In August 2025, the Court dismissed Johnson's facial challenge to the 2019 written policy with prejudice and dismissed her as-applied challenge without prejudice because the record did not establish that the City had applied that policy to Johnson's proposed speech. Johnson later filed a Second Amended Complaint, and the Parties developed a more complete factual record regarding Johnson's requests to speak, the City's responses, and Johnson's appearances at Yoakum city council meetings during 2025.

That record now permits resolution of Johnson's as-applied First Amendment challenge on the merits. The summary-judgment evidence establishes that the City repeatedly approved Johnson's requests to speak about her criticisms of Stary, City Clerk Bowe, and other City officials; communicated those approvals before the meetings;

publicly identified Johnson as a scheduled speaker on the meeting agendas; and ultimately permitted her to present those criticisms to the city council. The record also demonstrates that the City administered the 2019 written policy in a viewpoint-neutral and reasonable manner consistent with the city council meetings' status as limited public forums. Therefore, because the City's application of the 2019 written policy did not restrict Johnson's protected speech, her as-applied First Amendment challenge fails as a matter of law.

Pending before the Court is the City's Supplemental Motion to Dismiss and Motion for Summary Judgment on Johnson's Second Amended Complaint. (Dkt. No. 101). For the following reasons, the Court **DENIES** the Motion insofar as it seeks dismissal under Rules 12(b)(1) and 12(b)(6), **GRANTS** the Motion insofar as it seeks summary judgment under Rule 56, and **DISMISSES with prejudice** Johnson's First Amendment as-applied challenge to the City's 2019 written policy.

## I. BACKGROUND[1]

### A. FACTS

On June 26, 2017, Karissa Johnson experienced complications while giving birth at her home in Yoakum, Texas, and required emergency medical assistance. (Dkt. No. 100 at 2). Several emergency medical technicians ("EMTs") responded, including Steven Stary, an EMT paramedic employed by the City's fire department. (*Id.*). Johnson alleges

[1] For purposes of this Motion, the Court accepts all factual allegations in the Second Amended Complaint as true—except as they relate to jurisdiction—and views them in the light most favorable to Johnson. *White v. United States Corr., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

that, instead of immediately attending to her medical needs, Stary argued with her husband and the attending licensed midwives regarding the emergency response and position in which she should be transported in the ambulance to the hospital. (*Id.*). Johnson further alleges that she ultimately delivered a "very blue baby girl" and that the attending physician informed her that the child would not have survived had there been any further delay in reaching the hospital for an emergency cesarean section. (*Id.* at 3). Johnson contends that Stary had "delayed getting [her] to the hospital on one of the scariest days of her life by needlessly arguing, debating, and by trying to force her into a position that he should have known would be dangerous for the baby per standard EMT training." (*Id.*).

After the incident, Stary allegedly spread rumors about Johnson and her husband to unrelated third parties, criticized her husband's emergency call, and identified her family by name. (*Id.*). According to Johnson, "word travels in a small town," and she soon learned that details of the emergency response were circulating within the community harming her family's reputation. (*Id.*).

In early October 2017, Johnson asked City Manager Kevin Coleman to place her on the Yoakum city council agenda so that she could publicly complain about Stary during the October 10, 2017, city council meeting. (Dkt. No. 100 at 3–4). City Manager Coleman denied the request, explaining that complaints concerning City employees would not be heard during open-session city council meetings. (*Id.*). According to Johnson, City Manager Coleman informed her that citizens could publicly criticize only the city manager because the city council supervised that position, but complaints

concerning other City employees would be handled privately through the city manager because personnel matters fell within his authority alone, not the city council's.[2] (*Id.* at 3–5). Although Johnson was later permitted to address City Manager Coleman during the November 14, 2017, city council meeting, she alleges that she was not allowed to discuss Stary or mention him by name during her speech. (*Id.* at 5–6). Stary subsequently resigned from City employment on January 10, 2018. (*Id.* at 6).

Johnson alleges that she was again prevented from publicly criticizing Stary during a May 8, 2018, city council meeting under the City's unwritten policy governing public comments. (*Id.* at 7). During that meeting, Johnson attempted to discuss Stary while praising other emergency personnel involved in her daughter's delivery. (*Id.*). Johnson alleges that Mayor Anita Rodriguez interrupted her remarks by calling a point of order after Johnson mentioned Stary, and that City Clerk Bowe stated that Johnson's criticism was not an appropriate subject for discussion at the May 2018 city council meeting. (*Id.* at 7–8). Johnson further alleges that City Clerk Bowe confronted her outside City Hall following the May 2018 city council meeting, and publicly criticized her efforts to raise concerns about Stary, and that City officials caused a police officer to follow her vehicle after she departed. (*Id.* at 8–10).

---

[2] Yoakum has a "council-manager" form of government. Yoakum, Tex., Code of Ordinances, art. I, § 2 (1988 & Supp. 2025). Under the council-manager form, all city powers are vested in an elected governing body—the city council. *Id.* art. II n.2. The city council appoints a city manager. *Id.* art. III, § 2-123. The city manager serves as "the administrative head of the city," and is responsible to the city council "for the efficient administration of municipal affairs," including general oversight of municipal departments. *Id.*; *see also* Tex. Loc. Gov't Code Ann. § 25.029 (West).

On April 9, 2019, the City adopted a written agenda procedure policy (the "2019 written policy"), which governs citizen requests to speak at city council meetings. (Dkt. No. 100 at 10); (Dkt. No. 100-3 at 1–3). The 2019 written policy provides that the council "offers citizens an opportunity to bring forth any and all matters that are germane and relevant to any subject matter of City affairs or business that is within the scope of the authority and legislative functions of the City Council." (Dkt. No. 100-3 at 2). Citizens wishing to address the council must submit a written request in advance and are generally limited to two minutes unless the mayor grants additional time. (*Id.* at 2). The 2019 written policy further authorizes council members to determine whether a citizen's comments are germane and relevant to city affairs or business before the council. (*Id.* at 3). Johnson contends that the written policy "is no different tha[n] the unwritten policy" and is intended to prevent residents from criticizing City employees at council meetings. (Dkt. No. 100 at 10).

In 2024, Johnson sought to speak at the May and June city council meetings about Stary. (Dkt. No. 94 at 6); (*see also* Dkt. No. 79 at 4); (Dkt. No. 79-1 at 2, 10, 21). City Clerk Bowe approved both requests but advised Johnson that, although she could present her complaints concerning Stary, her remarks remained "otherwise subject to the existing policy." (Dkt. No. 94 at 6); (*see also* Dkt. No. 79-1 at 8, 11, 22, 24). Johnson did not attend the May 2024 meeting because of an alleged family emergency. (Dkt. No. 94 at 6); (*see also* Dkt. No. 80-6 at 2–3); (Dkt. No. 80-7); (Dkt. No. 79-1 at 20). Johnson likewise did not attend the June meeting. (Dkt. No. 94 at 6); (*see also* Dkt. No. 80-6 at 3–4); (Dkt. No. 79-1 at 37). Before the June 2024 meeting, however, she informed City Clerk Bowe that she

believed the City would prevent her from discussing Stary under the 2019 written policy and accused the City of censoring her speech and limiting her speaking time. (Dkt. No. 94 at 6); (*see also* Dkt. No. 79-1 at 37). City Clerk Bowe responded that the City was not attempting to censor Johnson or restrict her remarks, although any comments would remain subject to the 2019 written policy. (Dkt. No. 94 at 6); (*see also* Dkt. No. 80-11 at 2). Johnson maintains that she did not receive City Clerk Bowe's response until after the June meeting had concluded. (Dkt. No. 94 at 6); (*see also* Dkt. No. 80-6 at 3–4).

In February 2025, Johnson requested speaking slots at every monthly city council meeting from March 2025 through May 2026 and identified the topics she planned to address at each meeting. (Dkt. No. 101-1 at 2); (*see also* Dkt. No. 80-12). Johnson also stated that she did not agree to comply with the 2019 written policy and sought to discuss Stary at the March 2025 meeting. (*See* Dkt. No. 101-1 at 8). The City's attorney subsequently informed Johnson's attorney by email that Johnson had been approved to speak at the March and April 2025 meetings.[3] (Dkt. No. 101-1 at 2–3); (Dkt. No. 101-1 at 11); (*see also* Dkt. No. 81-1 at 5). The City's attorney also expressed concern that Johnson intended to speak on matters outside the city council's authority, stating: "Obviously, we have some concerns with your client's refusal to agree to limit her speech to matters within the Council's purview so as not to interfere with the City Council's ability to conduct business during the monthly meetings." (Dkt. No. 101-1 at 11); (*see also* Dkt. No. 81-1 at 5.). Johnson did not attend the March 2025 meeting, and the Parties agree that she

[3] Because litigation had commenced, the Parties communicated through their respective attorneys. (*See* Dkt. No. 101-1 at 8–12).

likewise did not attend the April or May 2025 meetings. (Dkt. No. 94 at 7); (*see also* Dkt. No. 85 at 11, 14). Although Johnson contends that she did not directly receive notice by phone or email as contemplated by the 2019 written policy, the City's attorney sent a March 6, 2025, letter addressed to Johnson's counsel approving her request to speak at the March and April 2025 meetings. (Dkt. No. 101-1 at 11); (Dkt. No. 94 at 7); (*see also* Dkt. No. 85 at 11); (Dkt. No. 81-1 at 5).

Between March and November 2025, Johnson continued requesting opportunities to speak at city council meetings under the 2019 written policy. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). The City approved each of Johnson's requests, including requests to speak about Stary, City Clerk Bowe, and other City officials. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). Johnson did not attend the March, April, or May 2025 meetings. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). She thereafter appeared and spoke at city council meetings from June through November 2025. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). During at least two of those meetings, Johnson addressed the city council regarding City Clerk Bowe and other City officials and employees. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). On August 12, 2025, and November 4, 2025, Johnson appeared before the city council and spoke on her requested topics criticizing Stary and City Clerk Bowe, along with additional topics she had requested to address. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3). The City also granted Johnson additional time to speak at both the August and November 2025 meetings. (Dkt. No. 101 at 5–7); (Dkt. No. 104 at 1–3).

### B. Procedural History

Johnson filed this action on December 12, 2018, in the Western District of Texas. (Dkt. No. 1). By agreement of the Parties, the case was transferred to the Victoria Division of the Southern District of Texas and assigned to Judge Hoyt. (Dkt. Nos. 7–10). Defendants moved to dismiss for failure to state a claim and on qualified immunity grounds. (Dkt. No. 16). Judge Hoyt denied the motion as premature, concluding that additional discovery was necessary. (Dkt. No. 21). Defendants filed an interlocutory appeal. (Dkt. No. 22).

On April 12, 2021, the Fifth Circuit reversed in part, and held that Johnson could not establish a First Amendment retaliation claim against Mayor Rodriguez and City Clerk Bowe "because she cannot show that she 'suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in' her speech." *Johnson v. Bowe*, 856 F. App'x 487, 492–93 (5th Cir. 2021) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). The Fifth Circuit remanded with instructions to dismiss that claim on qualified-immunity grounds and declined to address Johnson's remaining claims for lack of appellate jurisdiction. *Id.* at 491, 493. As a result, Johnson's retaliation claim against Mayor Rodriguez and City Clerk Bowe no longer remains in this action.

The case was reassigned to the undersigned on May 17, 2021. (Dkt. No. 29). Following remand, the Parties resumed discovery, and Defendants again moved to dismiss. (Dkt. No. 40). At that stage, three claims remained: (1) a claim against the City, City Clerk Bowe, Mayor Rodriguez, and City Manager Coleman for declaratory and injunctive relief challenging the City's unwritten meeting-speaker policy; (2) a First

Amendment retaliation claim against the City for monetary damages; and (3) a claim against Stary for violating the Health Insurance Portability and Accountability Act ("HIPAA") arising from his alleged disclosure of information concerning Johnson's medical treatment. (Dkt. No. 63 at 6, 8–13). On March 29, 2024, the Court dismissed all three claims but granted Johnson leave to amend because the City had adopted the 2019 written policy after Johnson filed her Original Complaint. (*Id*. at 10, 13). The Court explained that it was unclear whether the 2019 written policy continued to restrict Johnson's ability to speak about Stary at city council meetings. (*Id.* at 10). Following that ruling, no claims concerning the unwritten policy, retaliation, or Stary remained. The only potential claim that remained in the case concerned the constitutionality of the City's 2019 written policy.

On April 15, 2024, Johnson filed her First Amended Complaint challenging the constitutionality of the 2019 written policy. (Dkt. No. 67). Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6) and separately moved for summary judgment under Rule 56. (Dkt. Nos. 69, 79). On August 19, 2025, the Court granted those motions in part and denied them in part. (Dkt. No. 94). The Court dismissed Johnson's facial challenge to the 2019 written policy with prejudice, concluding that the policy is facially constitutional under the limited-public-forum doctrine. (*Id.* at 21–30). The Court also dismissed Johnson's as-applied challenge without prejudice. (*Id.* at 30–33). The Court concluded that Johnson had standing to challenge the 2019 written policy but that her as-applied claim was not ripe because the record did not establish that she had attempted to speak under the policy or that the City had actually applied the policy to her. (*Id.*).

The Court permitted Johnson to seek leave to amend only if she could allege facts supporting a ripe as-applied challenge to the 2019 written policy. (*Id.* at 33).

At an October 22, 2025, status conference, the Court granted Johnson leave to amend, and Johnson thereafter filed her Second Amended Complaint on October 31, 2025. (Dkt. No. 100). Although the Court granted leave only to assert an as-applied First Amendment challenge to the 2019 written policy—the only potential claim remaining in this litigation—Johnson's Second Amended Complaint also reasserted allegations concerning retaliation and largely repeated factual allegations previously asserted in her First Amended Complaint in support of her facial challenge. (Dkt. No. 100). The City responded by filing the present Supplemental Motion to Dismiss and Supplemental Motion for Summary Judgment. (Dkt. No. 101). The City argues that Johnson's as-applied challenge remains unripe, fails on the merits, and is moot in light of the City's adoption of a revised meeting-speaker policy in November 2025. (*Id.*). The City also seeks dismissal of Johnson's repleaded retaliation claim. (*Id.*). Johnson filed a response, (Dkt. No. 102), and the City filed a reply, (Dkt. No. 104).

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT UNDER RULE 56

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about

a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), as revised (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is

appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### B. RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed.2d 33 (2021) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014)); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (citing *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (per curiam) (en banc)).

Courts should address Rule 12(b)(1) jurisdictional issues before addressing any attack on the merits of a claim because "a federal court may not rule on the merits of a case without first determining its jurisdiction." *Daves v. Dallas County*, 64 F.4th 616, 623

(5th Cir. 2023) (en banc). Whether the attack on the merits comes through Rule 12(b)(6) or Rule 56, "[j]urisdiction is always first." *Pool v. City of Houston*, 87 F.4th 733, 733 (5th Cir. 2023) (quoting *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022)); *see Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B 1981) ("When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim."); *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F.Supp.3d 1020, 1024 (W.D. Tex. 2020) ("When considering a Rule 12(b)(1) motion to dismiss with a motion for summary judgment in the alternative, we must determine if subject matter jurisdiction is present before considering the substantive arguments of the summary judgment motion." (quoting *Cupit v. United States*, 964 F.Supp. 1104, 1106 (W.D. La. 1997))).

### C. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). "The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists." *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

### D. PROCEDURAL CONSIDERATIONS

Because the City moves both to dismiss and for summary judgment, the Court must determine which procedural vehicle among Rules 12(b)(1), 12(b)(6), and 56 is most appropriate to resolve the issues. As discussed below, the Court addresses Johnson's as-applied challenge under Rule 56 rather than under Rule 12(b)(1) or Rule 12(b)(6). The Court separately addresses Johnson's attempt to revive her previously dismissed retaliation claim and facial challenge.

#### 1. <u>Dismissal Under Rule 12(b)(1)</u>

The Court **DENIES** the City's Rule 12(b)(1) Motion. A district court may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981)).

In its August 2025 Memorandum Opinion and Order, the Court concluded that Johnson's as-applied challenge was not ripe because the record did not establish that the 2019 written policy had been applied to Johnson. (Dkt. No. 94 at 31–33). The City's present Motion relies on undisputed evidence now showing the opposite—that Johnson tested the 2019 written policy by repeatedly requesting to speak at city council meetings, that the City approved her requests under the policy throughout 2025, and that ultimately she appeared and spoke on the subjects she claims were restricted. (*See* Dkt. No. 101). The City's evidence therefore undermines its own jurisdictional argument and instead

presents a merits question concerning whether the City's application of the 2019 policy violated the First Amendment. Accordingly, the Court concludes that Johnson's as-applied challenge is not subject to dismissal as unripe under Rule 12(b)(1).

**2. Dismissal Under Rule 12(b)(6)**

The Court also **DENIES** the City's Rule 12(b)(6) motion. A motion to dismiss under Rule 12(b)(6) tests "the formal sufficiency of the statement of the claim for relief." 13B Charles Alan Wright et al., Federal Practice and Procedure § 1356 (3d ed. 2025). It is not a vehicle for resolving factual disputes or assessing "the substantive merits of the plaintiff's case." *Id.*; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Johnson's Second Amended Complaint alleges that the City applied the 2019 written policy to her in a manner that violated the First Amendment. (Dkt. No. 100). The City does not identify any deficiency in the sufficiency of those allegations. (Dkt. No. 101). Rather, it argues that the evidence shows that Johnson was permitted to speak and therefore suffered no constitutional injury from the City's application of the policy. (*Id.*). Because that argument challenges the merits of Johnson's as-applied claim rather than the sufficiency of her pleading, the Court addresses it under Rule 56.

**3. Summary Judgment Under Rule 56**

The City's Motion, (Dkt. No. 101) raises issues properly resolved under the Rule 56 summary judgment standard. This litigation has been pending since 2018, and the

Parties have developed an extensive factual record in discovery concerning Johnson's requests to speak and the City's application of the 2019 written policy to her speech. The City relies on that record—including undisputed evidence that Johnson's requests to speak were approved under the 2019 written policy and that she ultimately appeared and criticized Stary, City Clerk Bowe, and other City officials and employees—to argue that its conduct did not violate the First Amendment as applied to Johnson. (Dkt. Nos. 100, 102). Because the City's argument and supporting evidence concern the merits of Johnson's as-applied challenge rather than jurisdiction or pleading sufficiency, summary judgment under Rule 56 is the proper procedural vehicle for resolving the dispute.

## III. DISCUSSION

In its August 2025 Memorandum Opinion and Order, the Court held that "[i]f Johnson can show that the policy was actually applied to her, then she may file an amended complaint bringing an as-applied challenge; she may not bring any further facial challenges to the policy." (Dkt. No. 94 at 33). Johnson thereafter filed her Second Amended Complaint. (Dkt. No. 100). Although the Court granted leave to amend solely to assert an as-applied challenge to the City's 2019 written policy, Johnson also reasserts her retaliation claim against the City and her facial challenge to the 2019 written policy that the Court already dismissed. (Dkt. No. 100 at 11–13); (Dkt. No. 101 at 2–5); (*see also* Dkt. No. 94 at 21–30) (dismissing with prejudice Johnson's facial challenge to the City's 2019 written policy); (Dkt. No. 63 at 10–12) (dismissing without prejudice Johnson's retaliation claim against the City); (Dkt. No. 28-1 at 9) (Fifth Circuit holding that City Clerk Bowe and Mayor Rodriguez are entitled to qualified immunity in their individual

capacities on Johnson's retaliation claims). Because the Court did not grant Johnson leave to reassert either claim, neither is properly before the Court.

The Court turns to Johnson's remaining as-applied challenge to the 2019 written policy. The Court first addresses whether that claim is justiciable and then considers whether the summary-judgment evidence establishes a constitutional violation.

### A. JUSTICIABILITY OF JOHNSON'S AS-APPLIED CHALLENGE

#### 1. Standing for Johnson's As-Applied Challenge

One of the "landmarks" of justiciability is the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 561, 112 S.Ct. at 2136 (first citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); and then citing *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975)). Standing must be established with the same "manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing cases).

To establish standing for an as-applied challenge, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. at 2136). A plaintiff establishes an "injury in fact" under Article III if she has suffered, or imminently will suffer, a concrete and particularized injury. *See Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)). When examining as-applied challenges, courts assess only the facts

of the case, not hypothetical circumstances in which a rule may be unconstitutional. *Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014) (citing *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011)). Here, Johnson satisfies all three elements of standing for her as-applied challenge. Her challenge is not a pre-enforcement challenge because she alleges that the City has already applied the 2019 written policy to her speech.

Beginning with injury in fact, Johnson alleges that the City applied the 2019 written policy in a manner that restricted her ability to criticize Stary and City Clerk Bowe at city council meetings. *See Heaney v. Roberts*, 846 F.3d 795, 798–99, 801–02 (5th Cir. 2017) (addressing free-speech claims arising from restrictions on an individual speaking at a city-council meeting). Whether the City's conduct actually violated Johnson's First Amendment rights is a separate merits question. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427, 141 S.Ct. 2190, 2206, 210 L.Ed.2d 568 (2021) (holding that an injury for standing purposes is "any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts"). Restrictions on free-speech rights are among the intangible harms traditionally recognized as providing a basis for suit. *Id.* at 425, 141 S.Ct. at 2204. "If a plaintiff is an object of a [government] regulation 'there is ordinarily little question that the action or inaction has caused him injury'" for standing purposes. *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan*, 504 U.S. at 561–62, 112 S.Ct. at 2137).

The record contains sufficient evidence to establish that Johnson's alleged injury is concrete and particularized for standing purposes. Johnson's proposed speech—her criticisms of Stary and City Clerk Bowe at city council meetings—was subject to the 2019

written policy. (*See* Dkt. No. 100-3 at 2–3); (Dkt. No. 100-4 at 1); (Dkt. No. 100-5 at 1). City Manager Coleman testified in 2023 that the policy does "not typically" allow citizens to be placed on the agenda to criticize City employees. (Dkt. No. 100-5 at 1); (*see also* Dkt. No. 80-1 at 7, 20–21). And before the March and April 2025 meetings, the City expressed concern that Johnson intended to address matters outside the city council's authority. (Dkt. No. 100 at 12); (Dkt. No. 101-1 at 11). Johnson further contends that the City applied the policy to her in a restrictive manner by failing to notify her directly that her requests to speak at those meetings had been approved. (Dkt. No. 100 at 10–13); (Dkt. No. 102 at 2–4). Whether that conduct actually restricted Johnson's speech or violated the First Amendment goes to the merits of her claim, not whether the alleged injury is of a type cognizable under Article III.

The causation requirement for standing is satisfied because Johnson's alleged First Amendment injury stems from the City's application of the 2019 written policy. (Dkt. No. 100 at 12–13). Redressability is also satisfied because Johnson seeks damages for the alleged past constitutional violation. (Dkt. No. 100 at 13–14). If Johnson were to prevail on her as-applied challenge, an award of damages could redress that alleged injury. Accordingly, the Court need not decide at this stage whether Johnson's requests for declaratory or prospective injunctive relief would independently satisfy Article III's redressability requirement.

Accordingly, Johnson has established standing to pursue her as-applied challenge. That conclusion does not resolve whether the City actually applied the 2019 written policy in a manner that violated the First Amendment. The Court assumes the merits of

Johnson's legal theory for purposes of determining standing and addresses whether the summary-judgment evidence establishes a constitutional violation below. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("When considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim.") (alterations omitted) (quoting *Cole v. Gen. Motors Corp*., 484 F.3d 717, 723 (5th Cir. 2007)).

**2. Ripeness of Johnson's As-Applied Challenge**

The ripeness doctrine reflects "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction." *Cochran v. SEC*, 20 F.4th 194, 212 (5th Cir. 2021) (en banc) (citing *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston,* 340 F.3d 279, 282 (5th Cir. 2003) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). A claim is ripe "when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (quoting *Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003)). The two factors for ripeness are fitness for judicial decision and hardship from withholding judicial review. *Cochran*, 20 F.4th at 212. Claims are fit for judicial decision when no further factual development is needed. *Crown Castle Fiber, LLC v. City of Pasadena*, 76 F.4th 425, 436 (5th Cir. 2023). And where a claim would benefit from further factual development, the plaintiff must show that some hardship would result from the delay of judicial review. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008).

The City argues that Johnson's as-applied challenge is not ripe because it approved her requests to speak at the March and April 2025 council meetings and she never attended those meetings to speak. (Dkt. No. 101 at 4–5). The City contends that Johnson suffered no concrete First Amendment injury and is improperly attempting to revive her previously dismissed facial challenge. (*Id.*). The Court disagrees. The City's ripeness arguments substantially overlap with the merits of Johnson's claim because they turn on whether, and in what manner, the City applied the 2019 written policy to Johnson. (*See id.*). To the extent the City argues that its application of the policy did not actually restrict Johnson's speech, that argument concerns the merits of her as-applied challenge rather than whether the claim is sufficiently developed for judicial review. The Court therefore addresses that argument in its merits analysis below.

Johnson's as-applied First Amendment challenge is ripe. First, it is fit for judicial decision. Unlike when the Court issued its August 2025 Memorandum Opinion and Order, (Dkt. No. 94), further factual development is no longer necessary to resolve Johnson's as-applied challenge. Johnson has since appeared at Yoakum city council meetings throughout 2025 and spoken on the very subjects she contends the City restricted, including her criticisms of Stary, City Clerk Bowe, and other City employees. (Dkt. No. 101 at 5–7). The record therefore reflects an actual application of the 2019 written policy both to Johnson's requests to speak and to her speech at city council meetings. (*Id.*). Because the record now establishes the manner in which the policy was applied to Johnson, the Court is in a position to evaluate her as-applied challenge. *See Pearson*, 624 F.3d at 684.

Second, withholding judicial review would impose hardship on Johnson and serve little practical purpose. Unlike when the Court previously considered Johnson's as-applied challenge, the dispute no longer depends on contingent future events. The undisputed record shows that the City approved Johnson's requests to speak about her criticisms of City officials and former employees and that Johnson ultimately appeared and spoke on those subjects at city council meetings throughout 2025. (Dkt. No. 101 at 5–7). Postponing judicial review would neither facilitate further factual development nor clarify the issues before the Court. Instead, it would delay resolution of a dispute that has been pending for nearly eight years and concerns an allegedly completed constitutional injury. Accordingly, Johnson's as-applied challenge is ripe.

**3. <u>Mootness</u>**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 395 (5th Cir. 2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013)). In other words, "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citing *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998)).

The City contends that it adopted a new meeting-speaker policy on November 4, 2025. (Dkt. No. 101 at 8). Under that policy, "a citizen topic" need not "be reviewed or

previously added to an agenda." (*Id.*). The City argues that the 2025 policy is "even less restrictive than the 2019 [written] policy which this Court found was facially constitutional" and therefore moots Johnson's remaining claims. (*Id.*). Johnson's as-applied First Amendment challenge, however, concerns the City's past conduct under the 2019 written policy. And Johnson seeks damages for the alleged past constitutional violation. (Dkt. No. 100 at 13–14). The City's subsequent adoption of a new policy therefore does not moot her claim for damages arising from the alleged application of the 2019 written policy. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292–93, 141 S.Ct. 792, 802, 209 L.Ed.2d 94 (2021) (holding that nominal damages can redress a completed violation of a legal right); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009) (collecting cases and recognizing that a claim for nominal damages avoids mootness). Accordingly, Johnson's as-applied challenge remains a live controversy. The Court therefore proceeds to the merits.

### B. JOHNSON'S AS-APPLIED CHALLENGE

#### 1. First Amendment Standard

The Court has previously found the City's 2019 written policy to be facially constitutional. (Dkt. No. 94 at 21–30, 33). The Court found that Johnson's facial challenge failed because Yoakum city council meetings are limited public forums in which the City may impose reasonable, viewpoint-neutral subject-matter restrictions on speech that are consistent with the forum's purpose. (*Id.* at 25–30). The Court further found that the 2019 written policy is viewpoint neutral because it limits speakers to matters related only to

city affairs and within the city council's authority.[4] (*Id.*). The Court also found that those restrictions are reasonable because they ensure that public comment remains focused on matters within the city council's authority. (*Id.*).

In an as-applied First Amendment free-speech challenge, the Court must examine the challenged policy as applied to the particularized facts of the plaintiff's case, rather than hypothetical applications to the speech of others. *See Hosemann*, 771 F.3d at 292 (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010)); *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19, 28, 130 S. Ct. 2705, 2718–19, 2724, 177 L. Ed. 2d 355 (2010). "The first step in an as-applied First Amendment challenge is to determine whether the plaintiff's speech is constitutionally protected at all." *LIA Network v. City of Kerrville, Texas*, 163 F.4th 147, 163 (5th Cir. 2025). As the Court recognized in its August 2025 Memorandum Opinion and Order, Johnson has a First Amendment interest in criticizing Stary and City Clerk Bowe at city council meetings. (Dkt. No. 94 at 21–24, 29–31). The City does not dispute that Johnson's speech is constitutionally protected. (*See generally* Dkt. Nos. 101, 104).

Next, courts ordinarily determine the applicable level of scrutiny. *LIA Network*, 163 F.4th at 163. But where, as here, the challenge arises in a limited public forum, the relevant inquiry is whether the restriction, as applied, was reasonable in light of the

---

[4] Under the City's 2019 written policy, the city council "offers citizens an opportunity to bring forth any and all matters that are germane and relevant to any subject matter of City affairs or business that is within the scope of the authority and legislative functions of the City Council." (Dkt. No. 100-3 at 2). The policy also states that any council member may raise a point of order to determine "whether the subject matter to be heard . . . by a citizen is germane and relevant to . . . City affairs or business that is to be considered by City Council." (*Id.* at 3).

forum's purpose and viewpoint neutral. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758, 762–63 (5th Cir. 2010) (holding that the plaintiff's as-applied First Amendment challenge failed where, in a limited public forum, her request to publicly criticize a school district employee and seek that employee's dismissal at a school board meeting triggered a reasonable, viewpoint-neutral policy governing personnel matters).

As with the as-applied challenge in *Fairchild*, the relevant question here is not whether the City adopted a valid meeting-speaker policy for its city council meetings—that issue has already been resolved by the Court's facial-challenge analysis in its previous opinion. (*See* Dkt. No. 94 at 25–30). Rather, the question is whether the City constitutionally applied that otherwise valid policy to Johnson's speech. *See Fairchild*, 597 F.3d at 762–63. If the city council's application of the 2019 written policy to Johnson's speech was viewpoint neutral and reasonable in light of the forum's purpose, then her as-applied challenge fails.

### 2. <u>Application of the 2019 Written Policy to Johnson's Speech</u>

#### a. <u>The March and April 2025 Meetings</u>

Johnson continues to allege that the City denied her requests to speak at the city council meetings in March and April 2025 and thereby restricted her speech by its application of the 2019 written policy. (Dkt. No. 100 at 11–13). Johnson argues that she never received notice of the City's approvals to speak, and that the lack of notice constituted a denial of her speaking requests for the March and April 2025 meetings. (Dkt. No. 102 at 3–4). The City's treatment of Johnson at subsequent meetings is addressed below.

The City responds that undisputed summary-judgment evidence shows that it approved all of Johnson's requests to speak at each of the 2025 city council meetings under the 2019 written policy. (Dkt. No. 104 at 1–2). The City further argues that Johnson either exercised her right to speak at multiple city council meetings—including on the subjects she claims the City restricted, namely her criticism of Stary and City Clerk Bowe—or failed to appear at meetings after receiving approval to speak. (*Id.*). The City asserts that it communicated its approvals of Johnson's speaking requests to her attorney and that Johnson's approved speaking requests were also reflected on the publicly available agendas issued in advance of each city council meeting. (Dkt. No. 104 at 2); (Dkt. No. 101-1 at 13). The City also argues that Johnson does not dispute evidence showing that during city council meetings from June through November 2025, she spoke about her criticisms of Steven Stary, City Clerk Bowe, and other City officials, as well as related City affairs. (Dkt. No. 104 at 1–3).

The Court agrees with the City. This Court has already found that Johnson did not attend the March or April 2025 city council meetings despite being approved by the City to do so. (Dkt. No. 94 at 6–7); (*see also* Dkt. No. 101-1 at 2–3, 8–12); (Dkt. No. 81 at 4); (Dkt. No. 81-1 at 5); (Dkt. No. 82-1 at 5); (Dkt. No. 85 at 11, 14). The undisputed summary-judgment evidence further establishes that the City approved Johnson's requests to speak about her criticisms of Stary and City Clerk Bowe. Johnson nevertheless did not appear at either meeting.

Johnson argues that the City effectively restricted her speech by failing to notify her directly, as required by the 2019 written policy, that it had approved her requests to

speak at the March and April 2025 city council meetings. (Dkt. No. 102 at 2–4). The 2019 written policy states that:

> Requestors will be notified either by phone or email regarding the approval or denial of the request; should the request be out of compliance with any State law, City Charter, City Ordinance or locally adopted policy, the requestor shall be provided with a copy of the applicable regulations and an opportunity to revise the request to bring in it into compliance.

(Dkt. No. 102-6 at 2).

The undisputed summary-judgment evidence shows that the City approved Johnson's requests to speak at the March and April 2025 council meetings. (Dkt. No. 101-1 at 2–3, 8–12); (*see also* Dkt. No. 94 at 6–7). The record also establishes that the City's attorney communicated those approvals to Johnson's attorney via email on March 6, 2025, before the two city council meetings. (Dkt. No. 101-1 at 8–12) ("We have been asked to inform you and your client that she will be given time to speak on the City Council Agenda as she requested for March and April 2025," and "[t]herefore, the City has asked us to communicate with you and your client regarding the recent agenda requests meant to test the current policy prior to Plaintiff's deadline.").

At the time of these communications, this litigation was pending and both Parties were represented by counsel.[5] The Supreme Court has long established under "our

[5] The Court also notes that City attorney's decision to communicate with Johnson through her attorney was consistent with the professional rules governing communications with represented persons. *See* Tex. Disciplinary Rules Prof'l Conduct R. 4.02(a) (providing that, subject to specified exceptions, a lawyer representing a client may not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer regarding that subject).

system of representative litigation . . . each party is deemed bound by acts of his lawyer-agent, and is considered to have notice of all facts, notice of which can be charged upon attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *see also In re Harydzak*, 406 B.R. 499, 515 (Bankr. S.D. Tex. 2009) ("Under Texas law, knowledge acquired by attorney during existence of attorney client relationship, and while acting in scope of his authority, is imputed to client.") (quotations omitted). Thus, in representative litigation, notice to counsel is ordinarily imputed to the client. Regardless of whether Johnson personally received the email, her counsel did, and the City thereby provided notice through her counsel that the requests had been approved.

Johnson offers no evidence that her attorney failed to receive the City's communication or that the communication was inadequate or untimely. And whether Johnson's attorney relayed the City's communication to Johnson is generally a matter between attorney and client, not the City. The City also published the agendas in advance of the March and April 2025 city council meetings, identifying Johnson as an approved speaker and listing the topics on which she requested to speak. (Dkt. No. 101-1 at 13, 25).

Even assuming the City did not notify Johnson personally by phone or email as contemplated by the 2019 written policy, any such procedural deviation, standing alone, would not establish a constitutional violation. Johnson's argument conflates compliance with the City's notification procedure under the 2019 written policy with the constitutional inquiry presented by her as-applied First Amendment challenge. For purposes of Johnson's as-applied claim, the relevant question is whether the City's *implementation* of the 2019 written policy unconstitutionally restricted Johnson's

protected speech. On this record, no reasonable factfinder could conclude that it did. The record shows that the City approved Johnson's requests, communicated those approvals to her counsel—and by extension, Johnson—before the meetings, and publicly identified Johnson as a scheduled speaker on the agendas published in advance of each meeting. (*See* Dkt. No. 101-1 at 2–3, 8–12, 13, 25). Apart from her argument concerning direct notice, Johnson identifies no evidence that the City's actions prevented her from appearing or speaking at either meeting. The City therefore constitutionally applied the 2019 written policy to Johnson's March and April 2025 requests because it permitted her to speak at both meetings and did so in a reasonable and viewpoint-neutral manner.

Accordingly, Johnson's renewed contention that the City denied her an opportunity to speak at those city council meetings remains unpersuasive and finds no support in the summary-judgment evidence.

b. <u>The May through November 2025 Meetings</u>

That brings us to the subsequent meetings. The record concerning the May through November 2025 meetings further supports the City's position. The undisputed summary-judgment evidence shows that Johnson had requested speaking time at city council meetings throughout 2025 and that each request was approved under the 2019 written policy. (Dkt. No. 101 at 6–7); (Dkt. No. 101-1 at 8–19). Johnson requested speaking time for the May, June, July, August, September, October, and November 2025 meetings. (Dkt. No. 101 at 5–8). Although she did not attend the May meeting after receiving approval to speak, she appeared and spoke at the June, July, August, September, October, and November meetings on a variety of topics identified in her

requests. (*Id.*). The record further shows that Johnson was permitted to speak—and did speak—on the subjects that form the basis of her as-applied challenge.

For instance, at the August 2025 meeting, the City approved her speaking request, she appeared, and she spoke on her criticism of City Clerk Bowe. (Dkt. No. 101 at 6); (Dkt. No. 104 at 1–2). At the November 2025 meeting, the City approved her speaking request, she appeared, and she spoke on her criticism of former city employee Stary, in addition to other requested topics. (Dkt. No. 101 at 6–7); (Dkt. No. 104 at 2–3). Johnson does not dispute this evidence in her Response. (Dkt. No. 102).

The August 12, 2025 meeting illustrates the point. The City permitted Johnson to speak on her following topic request:

> I would like to read a complaint about the unprofessional behavior in which the City Clerk conducts the business of her office and how she regularly demeans other city employees and local residents while on paid city time. I would also like to complain about how the City Council has consistently worked to deprive me and other persons from making hard hitting complaints during public comments at City Council meetings.

(Dkt. No. 104 at 2).

Johnson then spoke for six minutes during the August 2025 city council meeting on her topic criticizing City Clerk Bowe, which was more than the customary two-minute limit under the City's 2019 written policy.[6] (Dkt. No. 104 at 2). The regular meeting

---

[6] The 2019 written policy comprises eight "guidelines" that "clarify the procedures for placing an item on a City Council Agenda in compliance with all State laws, City Charter, and local policies." (Dkt. No. 100-3 at 2). The Court notes the relevant 2019 written policy guideline detailing the two-minute limit for meeting speakers: "All requests to be placed on the City Council Agenda shall be submitted in writing utilizing the approved form. Each citizen is limited

(continue)

minutes also confirm that Johnson voiced her criticism of City Clerk Bowe during the meeting:

> VISITORS were acknowledged and welcomed. Karissa Johnson was present to make complaints against City of Yoakum employees claiming City Clerk Theresa Bowe was disrespectful to employees. Additional comments were provided by Mrs. Karissa Johnson regarding City of Yoakum City Council public comment policies are inappropriate and unconstitutional. Further comments were provided from Mrs. Johnson related to Yoakum Economic Development Corporation grant policies and procedures, accusing the Corporation of unfair funding opportunities.

(Dkt. No. 101-1 at 91).

As the Court has already held, the Yoakum city council meetings are limited public fora. (*See* Dkt. No. 94 at 25–30). Accordingly, the City may impose speech restrictions that are reasonable in light of the meetings' purposes and viewpoint neutral. *See Fairchild*, 597 F.3d at 758. Nothing in the evidence suggests that the City discriminated based on Johnson's viewpoint. Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney*, 846 F.3d at 802 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995)). Johnson identifies no evidence that the City restricted her August remarks because of her viewpoint. To the contrary, the City approved her request, permitted her to criticize City Clerk Bowe and the City's

---

to two minutes in their presentation unless additional time is deemed necessary by the Mayor. Citizens shall not be allowed to grant their time to another citizen approved to present on the Agenda." (*Id.*).

public-comment policies, and allowed her six minutes to speak—three times the ordinary two-minute limit. (*See* Dkt. No. 104 at 2).

Moreover, the undisputed summary-judgment evidence also reflects that during the November 4, 2025, city council meeting, the City permitted Johnson to speak on her criticism of Stary. (*See* Dkt. No. 104 at 2–3). Johnson requested to speak on the following topic:

> I would like to read an edited copy of the original complaint that I requested to read about Steven Keith Stary. Steven Keith Stary is a former City [o]f Yoakum employee. I made this request on or about October 4, 2017, to former City Manager Kevin Coleman. I would also like to read a complaint about actions taken by City Clerk, Theresa Bowe, in regards to the oppression of my First Amendment rights to seek a redress of wrongs, to peaceably assemble, and to speak freely about this complaint and other concerns and complaints that have developed since May 6, 2018, and are germane to m[y] business and/or operation of the City of Yoakum.

(Dkt. No. 104 at 2–3).

Johnson spoke about her criticisms of Stary and other City officials during this November 2025 city council meeting for six minutes, which was again more than the typical two-minute limit prescribed by the 2019 written policy. (*See id.*). The November 2025 meeting minutes confirm the following:

> ACKNOWLEDGEMENT OF VISITORS/RECOGNITIONS
>
> a) Receive complaints from Karissa Johnson on former and current City of Yoakum employees (speaker requests 6 minutes for this item)
>
> b) Receive a request from Karissa Johnson to dispose of collapsing buildings and health hazards (speaker requests 6 minutes for this item)

(Dkt. No. 101-1 at 126).

The same analysis applies to the November meeting. The City permitted Johnson to speak at the November 2025 city council meeting on her requested topic—criticism of Stary—under the same procedures that applied to any other meeting speaker. Johnson appeared, spoke on the topic she identified and was approved in advance, and even received additional speaking time beyond that afforded to other speakers. (*See* Dkt. No. 104 at 2–3). Johnson identifies no evidence that the City restricted her November remarks because of her viewpoint or otherwise applied the policy to her unreasonably.

Taken together, the undisputed evidence shows that the City repeatedly approved Johnson's requests to speak, including requests to criticize City Clerk Bowe, former City employee Stary, other City officials, and the City's own public-comment policies. Nothing in the record would permit a reasonable factfinder to conclude that the City applied the 2019 written policy to Johnson in a viewpoint-discriminatory or unreasonable manner. Accordingly, Johnson's as-applied challenge fails.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the City's Supplemental Motion to Dismiss and Motion for Summary Judgment. (Dkt. No. 101). The Court **GRANTS** summary judgment in favor of the City on Johnson's as-applied challenge to the City's 2019 written policy.

It is SO ORDERED.

Signed on September 29, 2026.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**